## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

---

**LONNIE SMITH**,

       a*n individual*

       Plaintiff,               Case No.: 1:25-cv-1380

v.                             Hon.

**CITY OF EAST LANSING**, *a municipal corporation,*
**OFFICER ANDREW LYON***, in his individual*
*and official capacities*, and **CHIEF JENNIFER BROWN**,
*in her individual and official capacities,*

       Defendants.

---

## <u>COMPLAINT AND JURY DEMAND</u>

NOW COMES Plaintiff, Lonnie Smith, by and through his attorneys, NOVA LAW, PLC, and for his complaint hereby states as follows:

## <u>INTRODUCTION</u>

1.    Plaintiff Lonnie Smith has always known that he could be targeted by police officers because he is black.

2.    On August 24, 2025, Lonnie Smith was pepper sprayed, arrested, confined in a cell to suffer without necessary medical treatment, wrongfully charged with a crime he did not commit, and falsely labeled a criminal to the public, all

-1-

because, in Defendant Chief Jennifer Brown's public words, Lonnie Smith was a part of "a disproportionate number of minorities" who came to East Lansing to "commit crimes."

3.      Lonnie Smith, at just twenty-two years-old, will have to spend the rest of his life bearing the pain and trauma of that day and with the knowledge that the city he grew up in, the city that he loves, views him as nothing more than a minority and a criminal.

4.      This is a civil rights action in which Plaintiff, Lonnie Smith, seeks relief and all damages that flow from Defendants' violations of Smith's rights, as secured by the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. §1983.

5       As part of the relief sought herein, Plaintiff Lonnie Smith seeks damages that flow from Defendants' violations of Smith's rights, as secured by Article I, § 11 of the Michigan Constitution, as well as any and all reputational damages recoverable under MCL §600.2911 and common law torts, attorney fees and costs, economic, non-economic, punitive damages and any further relief the Court deems Proper.

## JURISDICTION AND VENUE

6.    Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, and jurisdiction is therefore proper pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States.

7.    This Court also has supplemental jurisdiction over Plaintiffs state law claims, including defamation and common law tort claims, pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as the federal claims asserted herein.

8.    Venue is proper in the Western District of Michigan, Southern Division, under 28 U.S.C. § 1391. The parties reside in this judicial district, and the events giving rise to Plaintiff's claims occurred within this district.

## **PARTIES**

9.    Plaintiff LONNIE SMITH is a twenty-two year-old black male and student who was born and raised in and around the City of East Lansing, Michigan.

10.    Defendant ANDREW LYON is a white police officer and employee of the East Lansing Police Department at all relevant times and is sued in his individual and official capacity.

11.    Defendant JENNIFER BROWN was the Police Chief for the East Lansing Police Department at all relevant times and is sued in her individual and official capacity.

-3-

12.    Defendant CITY OF EAST LANSING is a municipal corporation organized under the laws of the State of Michigan, with its principal offices located in East Lansing, Michigan.

## FACTUAL ALLEGATIONS

13.    Lonnie Smith ("Smith") is a major university student who was visiting friends in his hometown of East Lansing to participate in Michigan State University's welcome-week celebrations to kick-off a new school year.

14.    At the above date, Lonnie Smith ("Smith") along with his friends, including his best friend Mason Woods ("Woods"), were enjoying a casual night out in downtown East Lansing.

15.    At or around 1:30 A.M., Woods was waiting at the front of a crowded line outside of a local East Lansing restaurant, Dave's Hot Chicken, located off of Albert Avenue, while Smith was waiting across the street with other friends.

16.    As Woods was in line and Smith was across the street talking with friends, nearly a dozen East Lansing police officers occupied the same block of East Lansing, hovering over the students as they walked by.

17.    While in line and in a tight, crowded doorway in front of the restaurant, an argument arose between Woods and several other individuals in line.

18.     Observing the dispute from across the street, and recognizing the other individuals as acquaintances from his hometown, Smith decided to cross the street and try to diffuse the situation by getting in between his friend and removing Woods from the exchange before anything further happened.

19.     At all time, Smith was completely sober and friendly with all of the parties involved and largely succeeded in his pursuit of deescalating the situation. He successfully got in between the parties and began restraining Woods and removing him from the situation. With the help of other individuals in containing Woods, and the misunderstanding that led to the argument slowly coming to light, it was clear to everyone involved that the situation was deescalating and that Smith's role in it was that of a peacemaker, not an instigator.

20.     Nevertheless, at the above time and place, three East Lansing Police Officers, including Defendant Officer Andrew Lyon ("Officer Lyon"), who are employees of Defendant City of East Lansing, and acting in the course of their employment, were standing less than fifty feet away from the restaurant entrance and decided to swarm on the crowd.

21.     Officer Jacey Kingsbury was the first to enter the crowd and make it to Woods, with Officer Logan Wainman close behind. As they approached, Officer Kingsbury said "police," but the commotion of the crowd and the noise from the

busy street drowned out the comment. The individuals present were unaware that police intervention was occurring, including Smith.

22.     Having made it into the crowd in seconds, both officers observed an unidentified individual restraining Woods from the back while Smith was restraining him from the front. Officer Kingsbury grabbed ahold of Woods's right arm while Officer Wainman grabbed Woods's left arm, clearly recognizing Woods was the individual the group was trying to calm down. In doing so, Woods becomes completely contained, with four individuals now restraining him on all sides.

23.     At this point, Smith, who was focused on deescalating the situation, was still unaware that police intervention was occurring.

24.     With Woods restrained, Officer Kingsbury says, "police, stop." However, as Officer Kingsbury is giving this first command to "stop," Defendant Officer Lyon emerges from the back of the crowd. Then, mere seconds into approaching the crowd, without any verbal warning, Defendant Officer Lyon unholstered his police issued OC Pepper spray, reached over Officer Kingsbury's right shoulder, aimed it within 5 inches of Smith's face, and sprayed Smith directly in his eye. Defendant Officer Lyon then turned the spray into Woods's face and unleashed it upon the entire crowd.

25.     Smith, who was completely unaware that police intervention was occurring until being hit directly in the eyes with the chemical agent, was left

hunched over in complete shock, blinded and immobilized by the pain. The crowd dispersed with nearly a dozen other individuals including the officers, being impacted by the harmful spray.

26.    Officer Kingsbury and Officer Wainman took Woods away while Defendant Officer Lyon descended on the confused and immobilized Smith. By the time Smith was handcuffed, he was surrounded by eight East Lansing Police Officers.

27.    The entire interaction, from officers first entering the crowd to Smith being pepper sprayed, lasted less than 8 seconds.

28.    The time between Defendant Officer Lyon entering the crowd and spraying smith was less than 5 seconds.

29.    The time between Officer Kingsbury's first command to "stop" and Defendant Officer Lyon's decision to spray Smith was less than 3 seconds.

30.    As Smith was being handcuffed and searched, he was visibly confused, blind, and in immense pain, he told Officer Lyon that he was "breaking it up," to which Officer Lyon replied "it don't matter what you do."

31.    At this point, because Defendant Officer Lyon failed to identify himself and sprayed Smith in the eyes without warning, leaving Smith temporarily blinded, Smith still did not know what officer he was talking to or who his assailant was.

32.    Still confused as to why he was pepper sprayed, Smith continued to explain to Defendant Officer Lyon that he had done nothing wrong, repeating that "I was trying to deescalate the situation." Defendant Officer Lyon refused to listen, even when other individuals were confirming that Smith was only trying to deescalate.

33.    As Smith and others are trying to explain to Defendant Officer Lyon that spraying Smith was a mistake, footage from the scene shows multiple individuals, including police officers, still suffering from the lasting impacts of the pepper spray. An officer is seen wiping her eyes and another young woman, who was standing a couple feet away from Smith when the pepper spray was unleashed, is seen sitting up against the wall crying while her friend tries to comfort her.

34.    The crying young woman and her friend were forced to move once Defendant Officer Lyon pushed Smith up against the wall where the girls were recovering from the unjustified spray.

35.    Defendant East Lansing Chief of Police Brown was present at the scene, overseeing everything the officers were doing and supervising their conduct.

36.    While Smith was handcuffed and pushed against the wall, Defendant Officer Lyon continued to try and justify his use of force by telling Smith that he was "surrounded by police" and, since "none of you guys stopped, everyone got sprayed."

37.     Defendant Officer Lyon walked Smith to a police car and Smith once again made another attempt to explain the situation to Defendant Officer Lyon, saying "I was trying to deescalate the situation…sir, I wasn't fighting him, that's my best friend." Once again, Defendant Officer Lyon ignored Smith's pleas and instead says, "you'll be in jail until you're sober," even though Smith was completely sober at the time of the arrest.

38.     Defendant Officer Lyon searched Smith a second time and then locked him in the back of a police cruiser to transport him to the jail.

39.     After Smith was locked in the police cruiser, Smith's friend came over to Defendant Officer Lyon to see how he could get Smith out of jail. Officer Lyon immediately acknowledged that the alleged crime was not serious, stating "its disorderly fighting, *it's not that big a deal*."

40.     Defendant Officer Lyon then drove Smith to the police station located only a block away from the restaurant where this incident unfolded. Smith remained in immense pain with his sinuses still filled with the spray and his eyes burning from the chemical agent.

41.     Once at the jail, officers continued to neglect Smith's medical needs, offering him only wet wipes and "personal advice on how to maximize relief from the PCA exposure."

42.     After being locked in a jail cell without any medical treatment, and after a breathalyzer test revealed that his BAC was 0.00, Smith was released from jail and charged with disorderly conduct - fighting under City of East Lansing Ordinance 26-52(9).

43.     Three weeks later, on or before September 19, 2025, the East Lansing police department gained access and reviewed video footage of the August 24th incident captured by the restaurant, Dave's Hot Chicken.

44.     This footage clearly revealed what everybody at the scene already knew: no fight ever happened. The footage proves that Smith was not fighting, was not being disorderly, and instead was trying to deescalate the situation. It also reveals the excessiveness and unreasonableness of Defendant Officer Lyon's decision to deploy chemical spray directly into Smith's face without having assessed the situation.

45.     Nevertheless, on September 26, 2025, Defendant City of East Lansing published a press release saying Smith was engaged in a "Fight outside Dave's Hot Chicken" even though the footage from the restaurant wholly contradicts these statements. The press release stated that, after "multiple loud verbal commands…Smith and Woods continued to ignore them and actively engaged in physical altercations," and that "Smith was held until sober."

46.    The Defendant City of East Lansing published this completely false "report" knowing that it was contradicted by the video of what happened. Merely days later, Defendant Chief Brown made a public statement regarding the arrest of Smith, saying "[w]e have a very transient population, and over the last month, starting with Welcome Weekend, we have had a ***disproportionate number of minorities*** come into the community and commit crimes, and as police officers we are simply responding to those crimes." (emphasis added).   The press release remains on the City of East Lansing's website to this date.

47.    On October 17, 2025, all criminal charges against Smith were dropped.

48.    As a direct and proximate cause of the unlawful activities described in this complaint, Plaintiff has suffered personal and reputational damages, all past, present, and future.

## COUNT I: Fourth Amendment, 42 U.S.C. § 1983
### Excessive Force

49.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

50.    Section 1 of the Civil Rights Act of 1871, codified as 42 U.S.C. § 1983, establishes a federal cause of action for constitutional violations inflicted by state actors.

51.     Defendant Officer Andrew Lyon, acting under color of law, deprived the Plaintiff of his rights and privileges conferred by the Fourth and Fourteenth Amendments to the United States Constitution.

52.     Defendant Officer Andrew Lyon intentionally used excessive and unreasonable force against Smith.

53.     Defendant Officer Andrew Lyon violated Plaintiffs clearly established and federally protected rights as set forth under the United States Constitution and the Amendments thereto, including but not limited to, the Fourth Amendment of the United States Constitution to be free from unreasonable searches and seizures, when he employed unnecessary and unreasonable excessive force, which resulted in significant injuries to Plaintiff.

54.     The force Defendant used against a non-resisting, unarmed, outnumbered, non-violent citizen was unreasonable in light of the facts and circumstances.

55.     As a proximate result of violation and/or depreciation of Plaintiff's constitutional rights by Defendant Officer Lyon, Plaintiff has suffered damages.

WHEREFORE, Plaintiff requests judgment against this Defendant for compensatory, exemplary, and punitive damages in an amount as Plaintiff shows himself to be entitled.

## COUNT II: Fourth Amendment, 42 U.S.C. § 1983
### False Arrest

56.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

57.    Defendants arrested Smith without probable cause.

58.    Defendants acted under color of law when they arrested Smith without probable cause.

59.    The actions of Defendants described herein violated the rights of Smith to be free from unlawful seizures as guaranteed by the Fourth Amendment of the United States Constitution

WHEREFORE, Plaintiff requests judgment against this Defendant for compensatory, exemplary, and punitive damages in an amount as Plaintiff shows himself to be entitled.

## COUNT III: Fourth Amendment, 42 U.S.C. § 1983
### Excessive Detention

60.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

61.    Defendants arrested Smith without an arrest warrant nor probable cause.

62.    Defendants unreasonably delayed releasing Smith from custody under the false notion that he had to "sober up."

63.     Defendants acted under color of law when they unreasonably delayed releasing Smith.

64.     The actions of Defendants described herein violated the rights of Smith to be free from unreasonable seizures guaranteed by the Fourth Amendment of the United States. Stemming from this unreasonable detention, Smith was unable to seek medical treatment for his eyes until many hours later at a local area hospital.

WHEREFORE, Plaintiff requests judgment against this Defendant for compensatory, exemplary, and punitive damages in an amount as Plaintiff shows himself to be entitled.

### COUNT IV: *MONELL* CLAIM – 42 U.S.C. § 1983
### (Against Defendant City of East Lansing)

65.     Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

66.     At all times relevant, Defendant City of East Lansing was responsible for the hiring, training, supervision, discipline, and conduct of its police officers, including Defendant Officer Andrew Lyon.

67.     The City, through its policymakers including Defendant Chief of Police Jennifer Brown maintained and enforced customs, practices, and policies that directly caused the deprivation of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

68.     Specifically, the City of East Lansing created and maintained policies, practices, and customs that:

(a) Encouraged and tolerated the use of excessive and disproportionate force, particularly against individuals of color and members of minority communities;

(b) Failed to properly train, supervise, and discipline officers regarding the appropriate use of force and the prohibition against racial bias in policing;

(c) Failed to collect, analyze, or act upon data and citizen complaints indicating racially disparate use of force.

69.     These policies and customs were not isolated occurrences but were widespread, persistent, and well known to City policy makers, who nevertheless failed to take reasonable steps to correct them.

70.     These policies and customs were present on the night of August 24, 2025, when Plaintiff was viciously pepper sprayed by Defendant's police officer.

71.     The policies and customs present on the night of August 24, 2025, were being overseen and endorsed by Defendant Chief of Police Jennifer Brown, who was present during the wrongful spraying and arrest of Plaintiff.

72.     Upon information and belief, Defendant Chief of Police Brown stated to the East Lansing Independent Police Oversight Commission ("ELIPOC") that her officers, especially Defendant Officer Andrew Lyon, did nothing wrong that night and acted consistently with policies and customs of the East Lansing Police Department.

73.    As a direct and proximate result of these policies, practices, and customs, Defendant Officer Andrew Lyon believed that he could act with impunity, including by using unreasonable and excessive force against Plaintiff and others similarly situated, particularly individuals who were considered a part of a class of "a disproportionate number of minorities."

74.    The City of East Lansing's deliberate indifference to the foreseeable consequences of its policies and customs was the moving force behind the violation of Plaintiff's constitutional rights as guaranteed by the United States Constitution.

75.    As a direct and proximate result of the City of East Lansing's unconstitutional policies, customs, and practices, Plaintiff suffered violations of his rights under the Fourth and Fourteenth Amendments, as well as physical injury, emotional distress, humiliation, and other damages.

WHEREFORE, Plaintiff requests judgment against this Defendant for compensatory, exemplary, and punitive damages in an amount as Plaintiff shows himself to be entitled.

### COUNT V: Article I, Section 11 of the Michigan Constitution

76.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

77.     Defendants unreasonably and unlawfully arrested, detained, searched, and used force against Smith causing injury.

78.     The actions of the defendants described herein violated the rights of Smith to be free from unreasonable searches and seizures as guaranteed by Article I, Section 11 of the Michigan Constitution.

WHEREFORE, Plaintiff requests judgment against this Defendant for compensatory, exemplary, and punitive damages in an amount as Plaintiff shows himself to be entitled.

## COUNT VI – Libel
### (As to Defendants' City of East Lansing and Chief Brown)

79.     Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

80.     On September 26, 2025, Defendant City of East Lansing published false statements through a press release to statewide news outlets stating that Plaintiff, Lonnie Smith, was fighting on the night of August 24, 2025, and that Plaintiff was only released from jail once he was "sober."

81.     Defendant City of East Lansing published multiple false and defamatory statements through their press release, including statements like:

   a. The press release was titled "Multiple Arrests, Charges Made After Welcome Weekend *fight* Near Downtown East Lansing Restaurant."

   b. "In the wake of multiple arrests and criminal charges after a Welcome Weekend *fight* outside of a downtown East Lansing restaurant…"

-17-

c. "As a result of the *fight* outside Dave's Hot Chicken…ELPD arrested the following men…"

d. "Lonnie Smith, 21, of Okemos, was charged with disturbing the public peace by engaging in a *fight* or brawl in a public space and issued a citation for misdemeanor disorderly *fighting*."

e. "The video footage was released today after the ELPD decided to end its investigation into the *fight*."

f. "Several ELPD officers responded to a crowd where they observed *physical violence* occurring between Smith and Woods."

g. "Despite…repeated lawful orders, Smith and Woods continued to ignore them and actively engage in *physical altercations*."

h. "In response to the *violent* commotion, an officer deployed Oleoresin Capsicum (OC) spray, a nonlethal tool designed to deescalate the disorder and halt further *fighting*."

i. "While [at the East Lansing jail], both men *received medical attention* from ELPD medics…"

j. "Smith was held until *sober* and released later that day…"

82.     All of the above statements are false. Defendant City of East Lansing knowingly, recklessly, intentionally, and maliciously published these false statements knowing the statements were untrue based on their own investigation. Defendant City of East Lansing published these false statements with the intention to maliciously demean the reputation of Plaintiff, Lonnie Smith.

83.     Defendant City of East Lansing's published press release goes on to further publish false statements in a section titled "**Statement from ELPD Chief Jennifer Brown:**"

    a.  "Our officers have been doing their jobs to prevent assault, stop *fights*, safely disperse large crowds and respond to other emergencies…"

    b.  "We continue working closely with prosecutors to evaluate evidence and consider charges against additional individuals who participated in *violence* that night…"

    c.  "We will continue to have a strong presence downtown to deter *actions* that would *endanger lives*."

84.     These additional published Statements made directly by Defendant Chief Brown, falsely suggest that Plaintiff was an individual who engaged in fights, violence, and action that endanger lives."

85.     These statements were published by Defendants after "The investigation into this incident [was] complete."  Upon information and belief, this press release was reviewed and approved by the City Attorney for the City of East Lansing prior to publication.

86.     Upon information and belief, Defendants' knowingly, recklessly, maliciously, and intentionally published these false statements while in possession of the Dave's Hot Chicken video, which clearly illustrated the Plaintiff did not engage in any fight or violence.

87.    Upon information and belief, Defendants' knowingly, recklessly, maliciously, and intentionally published the false statement "Smith was held until **_sober_** and released later that day…," with the knowledge that Plaintiff was completely sober during his wrongful arrest.

88.    Upon information and belief, it was reasonably foreseeable and intended that Defendants' publication would be republished by news outlets across the city and across the state of Michigan.

89.    Plaintiff gave notice of a retraction on October 7, 2025, during and interview with a local news outlet and through direct calls to the East Lansing City Counsel to retract the statements.

90.    As a direct and proximate cause of Defendants' libel, Plaintiff Lonnie Smith has suffered the following damages

   a.  Pain and suffering, past, present and future;

   b.  Severe emotional distress;

   c.  Humiliation, embarrassment and mental anguish.

   d.  Reputational damage, all past, present, and future, including harm impacting future job prospects

WHEREFORE, Plaintiff requests judgment against this Defendant for compensatory, exemplary, and punitive damages in an amount as Plaintiff shows himself to be entitled.

## VII – SLANDER

(As to Defendant Chief Brown)

91.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

92.    Defendant Chief Brown orally published false and defamatory statements about Plaintiff, Lonnie Smith, to a news outlet. These statements were republished by the news outlet and other various media, social media, and online sources, proliferating across the internet and garnering tens of thousands of views.

93.    Defendant Chief Brown's orally published statement was:

   a.    "We have a very transient population, and over the last month, starting with *welcome week*, we have had a disproportionate number of *minorities* come into the community and *commit crimes*, and as police officers we are simply responding to those crimes."

94.    Defendant Chief Brown published this statement to a news outlet while discussing the conduct of her officers during Welcome Week and during the incident on August 24, 2025, when Plaintiff Lonnie Smith was viciously pepper sprayed, wrongfully arrested, denied medical treatment, and thrown in a jail cell for hours until he was "sober" even though he was not intoxicated.

95.    Upon information and belief, Defendant Chief Brown knowingly and recklessly published this false statement, suggesting that Plaintiff Lonnie Smith was a part of a "disproportionate number of minorities" who "came into the community" during "welcome week" to "commit crimes."

96.     As a direct and proximate cause of Defendant's slander, Plaintiff Lonnie Smith has suffered the following damages

 a.  Pain and suffering, past, present and future;

 b.  Severe emotional distress;

 c.  Humiliation, embarrassment, and mental anguish.

 d.  Reputational damages, all past, present, and future, including harm impacting future job prospects

WHEREFORE, Plaintiff requests judgment against this Defendant for compensatory, exemplary, and punitive damages in an amount as Plaintiff shows himself to be entitled.

## COUNT VIII – Common Law Battery
(As to Defendant Officer Andrew Lyon)

97.     Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

98.     At all times relevant, Defendant Officer Lyon was acting under color of state law and within the course and scope of his employment as a police officer for Defendant City of East Lansing.

99.     On or about August 24, 2025, Defendant Officer Lyon intentionally made physical contact with Plaintiff by unleashing pepper spray less than six inches from Plaintiff's face and spraying him directly in the eyes without any warning, and then wrongfully arresting Plaintiff.

100.   Defendant's contact was intentional, harmful, and offensive, and was not consented to by Plaintiff.

101.   Defendant Officer Lyon's conduct constituted a battery under the common law of the State of Michigan.

102.   The use of force and chemical spray by Defendant Officer Lyon exceeded that which was reasonably necessary under the circumstances and was therefore unjustified under Michigan law.

103.   As a direct and proximate result of Defendant Officer Lyon's unlawful batter, Plaintiff suffered:

   a.   Physical pain and bodily injury;

   b.   Emotional distress, humiliation, and mental anguish;

   c.   Loss of liberty and violation of personal security; and

   d.   Medical expenses and other economic and noneconomic damages.

   e.   Reputational damages, all past, present, and future.

**WHEREFORE**, Plaintiff requests judgment against this Defendant for compensatory, exemplary, and punitive damages in an amount as Plaintiff shows himself to be entitled.

Respectfully submitted,

*/s/ Jack Rucker*
Jack W. Rucker (P86386)
Attorney for Plaintiff
**Nova Law, PLC**

428 W. Lenawee Street
Lansing, MI 48933
(517) 885-2000
jack@novalawplc.com

Dated: November 6, 2025

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury in the within encaptioned case.


Respectfully submitted,

*/s/ Jack Rucker*
Jack W. Rucker (P86386)
Attorney for Plaintiff
**Nova Law, PLC**
428 W. Lenawee Street
Lansing, MI 48933
(517) 885-2000
jack@novalawplc.com